IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA   :

   v.                                                    :   No. 20-1510

MATT JONES                              :

**GOVERNMENT'S MOTION FOR SUMMARY REVERSAL AND REMAND, AND TO BE EXCUSED FROM FILING A BRIEF**

     The government, as appellee in this matter, agrees with the appellant that the judgment of the district court should be vacated. The government has come to the determination upon careful consideration that the appellant's motion to suppress evidence was well taken, and the matter should therefore be remanded for further proceedings in which the government will not rely on that evidence. Further issues, regarding whether a new trial is warranted and regarding which charges, should be addressed on remand.

     In this criminal matter, defendant Matt Jones was convicted at trial of conspiracy to distribute heroin, possession of heroin with intent to distribute, possession of a firearm by a felon, and a firearm offense under 18 U.S.C. § 924(c). He was sentenced to a term of imprisonment of 240 months and other penalties. The sole issue he presents on appeal regards the district court's denial of the suppression of evidence seized from the defendant's residence on July 17, 2018.

Prior to that date, an investigation by the New Jersey State Police determined that Carol Lucy was selling heroin, and Matt Jones was her supplier. The police obtained an arrest warrant for Lucy (not Jones), and then determined on July 17, 2018, through a "ping" search that her cell phone was located at Jones' residence at 108 Federal Street in Bensalem.

At the request of the New Jersey authorities, numerous local officers proceeded to 108 Federal Street that morning to arrest Lucy. Under settled law, police may not enter a third party's residence to execute an arrest warrant without obtaining a search warrant for that residence. *Steagald v. United States*, 451 U.S. 204 (1981). Here, however, the officers obtained Jones' consent to search the residence, based on a false account of their purpose.

With other officers from various jurisdictions waiting nearby, two officers – a Bensalem Township police corporal in uniform, and a Philadelphia police detective in plain clothes – approached the residence and knocked on the door. When Jones answered the door, the officers asked to come inside. They said they had received a 911 call from the location that was dropped, and since that may often involve a "domestic issue," they wanted to look around to see if any injured person was present. Jones said, "no problem," while stating that no one had made a 911 call and no one was injured. One of the officers, Corporal Gansky, testified that he used this ruse for "officer safety," given that it was a narcotics investigation, and Jones himself was a suspect. During the ensuing search, officers located and arrested Lucy, and also saw other evidence of drug trafficking

that led them to obtain a search warrant to conduct a comprehensive search of the residence.

In the district court, the government opposed Jones' motion to suppress evidence seized from the residence, and the court found that the search of Jones' home was permissible based on his consent. It is well settled that there are no iron-clad rules in determining whether consent to search, that permits a warrantless search to proceed, is voluntary. The determination is made based on the totality of the circumstances, taking into account such factors as the police conduct and the target's education and experience. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). *See United States v. Crandell*, 554 F.3d 79, 88 (3d Cir. 2009) ("the critical factors comprising a totality of the circumstances inquiry include the setting in which the [search] consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting [party].") (citation omitted; bracketed material in original). However, there is authority that consent based on a ruse regarding official authority may be involuntary and ineffective.

The most pertinent Supreme Court case is *Bumper v. North Carolina*, 391 U.S. 543 (1968). In that matter, four officers who did not actually possess a search warrant arrived at the home of the grandmother of the suspect, and announced they had a warrant to search. The homeowner said, "go ahead." There was no coercion; according to a narrative produced by the court, the homeowner stated, "I had no objection to them making a search of my house. I was willing to

let them look in any room or drawer in my house they wanted to. Nobody threatened me with anything. Nobody told me they were going to hurt me if I didn't let them search my house. Nobody told me they would give me any money if I would let them search. I let them search, and it was all my own free will. Nobody forced me at all." *Id.* at 547 n.8. Yet the Supreme Court held that there was no voluntary consent in light of the misrepresentation of official authority:

> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.
>
> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

*Bumper*, 391 U.S. at 548-50 (footnotes omitted).

The ruling has been extended to situations in which the police rely not on a false claim to possession of a warrant, but other deceitful or inaccurate rationales.

In *United States v. Molt*, 589 F.2d 1247 (3d Cir. 1978) (which the parties and the district court here overlooked), the defendant, after consulting with his attorney, agreed to a demand to search his records presented by agents who mistakenly stated that they did not require a warrant to conduct the search. The district court held that this search was involuntary, given the agents' inaccurate

expression of authority, and the Third Circuit affirmed. The Court so ruled notwithstanding the defendant's business experience, college education, and opportunity to consult with his attorney, stating: "When evidence exists to show . . . that a defendant believed he must consent such evidence weighs heavily against a finding that consent was voluntarily given. And when that belief stems directly from misrepresentations by government agents, however innocently made, we deem the consent even more questionable." *Id*. at 1251-52.

The Ninth Circuit recently stated:

> Although the propriety of a ruse search or seizure depends on the particular facts of each case, our precedent draws a clear line between two categories of deception. Law enforcement's use of deception is generally lawful when the chosen ruse hides the officer's identity as law enforcement and facilitates a search or seizure that is within its lawful authority, such as pursuant to a valid search warrant. Deception is unlawful when the government makes its identity as law enforcement known to the target of the ruse and exploits the target's trust and cooperation to conduct searches or seizures beyond that which is authorized by the warrant or other legal authority, such as probable cause.

*United States v. Ramirez*, 976 F.3d 946, 953 (9th Cir. 2020) (suppressing evidence obtained when officers who had a warrant to search a residence for child exploitation offenses lured a suspect to the premises, to obtain his consent to search his person and vehicle as well, with a phone call falsely stating there had been a burglary at the residence). *See also Pagan-Gonzalez v. Moreno*, 919 F.3d 582 (1st Cir. 2019) (invalidating consent obtained when numerous agents investigating a child pornography offense went to the suspect's home and falsely stated that they "were there because a modem in a computer at the house was

'sending a signal and/or viruses to computers in Washington'; observing that "courts have regularly held that coercion is implicit when officers falsely present a need for urgent action," citing decisions involving a false claim that a bomb was planted in an apartment, that officers were searching for a missing girl, that a young girl claimed she had been raped at the location the police wished to search, and that there was a report of a gas leak, or of a water leak); *United States v. Harrison*, 639 F.3d 1273 (10th Cir. 2011) (officers falsely stated they had received an anonymous complaint regarding drugs and bombs at an apartment, and consent to search was then involuntary); *United States v. Parson*, 599 F. Supp. 2d 592, 606 (W.D. Pa. 2009) (lengthy opinion concludes that consent was involuntary where agents gained access to computers to look for child pornography by stating the investigation concerned possible identity theft; and adding that in the alternative, the court must conclude that "Parson consented only to a search and seizure of his property so as to facilitate an investigation into identity theft" and any further search exceeded the scope of the consent).

Here, the district court found that Jones' consent was freely and voluntarily given. It emphasized that the defendant was 35 years old, was very experienced in the criminal justice system, and was approached by no more than four officers, who did not use physical force or other coercion. And it held that the false story involved a "relative non-emergency" that did not rise to the level of exigency invoked in other matters in which courts rejected consent as involuntary. "The officers in this case did not falsely state that they had a warrant.

Rather, they approached Defendant and stated that they had received an abandoned 911 call and would like to take a look around. This does not rise to the level of creating a false emergency, such as representing that there is a bomb in the apartment or that Defendant may have been the victim of identity theft, as was the case with the defendants in *Harrison* and *Parson*. The ruse only involved a nebulous abandoned 911 call. The officers speaking to Defendant represented that they were unsure of the nature of the call. Moreover, Defendant was aware that neither he nor Lucy were injured or had made a 911 call. Therefore, there is no reason why Defendant would have felt pressured to allow entry into his residence, when he knew that he was not hindering a legitimate investigation." App. 19-20.

This case presents a very close call, but upon careful deliberation the government elects to now concede the issue. To be sure, law enforcement officials are often permitted to employ deception, and there are cases in which ruses premised on innocuous circumstances have been found not to abrogate consent. *See, e.g., United States v. Gregory*, 456 F. App'x 533, 536 (6th Cir. 2012) (not precedential) (law enforcement ruse about an arson investigation, unlike the water leak ruse, "did not present the same 'sense of urgency and compulsion for the defendant'" and thus did not invalidate consent); *United States v. Rose*, 2014 WL 4109619, at *4 (W.D. Ky. 2014) (law enforcement ruse about searching for a fugitive wanted for child support is "distinguishable from a search for a missing child, a kidnapping victim, a water leak, or a gas leak"); *United States v. Monzon-*

*Luna*, 2013 WL 6175818, *5 (E.D.N.Y. 2013) (law enforcement ruse about searching for a stolen cell phone was "innocuous" and "wholly distinguishable from a search for a missing child or imminent gas explosion"); *United States v. Pollaro*, 733 F. Supp. 2d 364, 368-69 (E.D.N.Y. 2010) (finding that, even if the search were represented as being a matter of "national security," "such circumstances would not rise to the level of the extreme deception required to render the consent invalid.").

But in this specific matter, we believe the evidence should not be admitted. The officers engaged in a ruse that Jones reasonably could have perceived as an emergency: that there had been an aborted 911 call, posing the possibility that a person was injured or otherwise in danger inside his home, leading multiple police officers to respond. It is reasonable to conclude, given the totality of circumstances in this case, that Jones was so alarmed that he believed he had no right to resist the officers' search of the home. Jones did not testify at the motions hearing, and there is no record regarding what Jones knew at the time about who else was inside the house, such that he could be sanguine that police would find no injured person. It also appears that the police, who would not want Jones to refuse their request, believed the scenario compelling enough to persuade Jones to accede.

We also consider that there are situations in which the use of a ruse is necessary to protect officer safety, providing an innocuous reason for officers' presence in what may be a dangerous environment, such that in the total

assessment of reasonableness required by the Fourth Amendment the law enforcement action is permissible. In this case, however, although the ruse about an aborted 911 call allowed the officers to engage safely with Jones, a known drug supplier who had a wanted drug dealer and firearms in his home, the government did not develop a record that use of this ruse was the safest option, as opposed to using a more innocuous ruse, or obtaining a warrant to search the house for Carol Lucy, without first alerting the occupants, and then proceeding accordingly.

Therefore, the government agrees that Jones did not voluntarily consent to a search of his home, as that requirement is explained in the case law, and in this particular case the evidence should be suppressed.

The government accordingly moves to vacate the judgment, asking the Court to remand the matter for further proceedings, and to relieve the government of its obligation to file a brief in this appeal.

Respectfully yours,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

*/s Christopher E. Parisi*
CHRISTOPHER E. PARISI
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

>Richard J. Giuliani, Esq.
>1717 Arch Street, Suite 320
>Philadelphia, PA  19103

>*/s Christopher E. Parisi*
>CHRISTOPHER E. PARISI
>Assistant United States Attorney

DATED:  March 9, 2021.